# Exhibit A



5040 Shoreham Place
San Diego, CA 92122
619.525.3990 *phone*
619.525.3991 *fax*
www.robbinsllp.com

August 11, 2020

**VIA FEDEX OVERNIGHT**

Board of Directors
EXELON CORPORATION
10 South Dearborn Street
Chicago, IL 60680

     **Re:**    **Exelon Corporation Stockholder Litigation Demand**

Dear Board of Directors:

We write on behalf of our client, James Clem, a stockholder of Exelon Corporation ("Exelon" or the "Company"). Mr. Clem demands that Exelon's Board of Directors (the "Board") investigate, address, remedy, and commence proceedings against certain of the Company's current and former officers and directors for violations of anti-bribery laws, breaches of fiduciary duties, violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), waste of corporate assets, unjust enrichment, and violations of all other applicable laws, rules, and regulations related to the wrongdoing alleged in this demand, as detailed below.

## OVERVIEW

Exelon, a utility services holding company, engages in the generation and marketing of energy in the United States and Canada. One of its subsidiaries is Commonwealth Edison Company ("ComEd"), which, according to the Company's Quarterly Report on Form 10-Q filed with the U.S. Securities and Exchange Commission ("SEC") on May 8, 2020, purchases, transmits, and distributes electricity in Northern Illinois, including the City of Chicago.

In a July 17, 2020 press release, the U.S. Department of Justice ("DOJ") announced that it entered into a settlement agreement with ComEd to resolve the criminal investigation into the Company's years-long illegal bribery scheme. ComEd ***admitted*** to arranging jobs and contracts for political allies of a high-level Illinois state official between 2011 and 2019, some which required little or no work, including appointing an individual to ComEd's board of directors. The state official is widely believed to be Illinois House Speaker Michael J. Madigan. During the time of the bribery, the Company had substantial matters before the Illinois state legislature, including legislation affecting the rate-making process.

As part of the settlement, ComEd agreed to pay a $200 million fine and institute certain reforms as part of a Deferred Prosecution Agreement (the "DPA"). Further, the Company must continue to cooperate with the DOJ investigation. Notable, as stated in the DPA, ComEd agreed that it will not seek any tax deduction in connection with any payment of the fine and it will not seek to recover any part of the fine from its customers. As a result, the entire $200 million will be borne by the Company's stockholders.



*Exelon Corporation Stockholder Litigation Demand*
Page 2

The bribery described above and in the DOJ's filings is not the end of the wrongdoing at the Company.  The bribery scheme had the related effect of rendering numerous of the Company's public statements false and misleading.  For instance, the Company had a Code of Business Conduct (the "Code") since at least 2012 that prohibited lobbying activities on behalf of Exelon without express approval of the Company's Government and Regulatory Affairs or the Legal Department.  In particular, the Code stated:

**Lobbying**

Exelon is subject to regulation at various levels of government, and is profoundly affected by decisions of elected and appointed government officials. Exelon is therefore engaged with and actively lobbies such government officials in the policymaking process in support of Exelon's business interests on various issues. It is important to our success that advocacy on behalf of Exelon be consistent, coordinated and focused on both our short-term and long-term interests. No Exelon personnel may engage in lobbying activities on behalf of the Company, testify or provide comments before any legislative committees for Exelon, or accept an appointment to an advisory or study group established by a legislative body or administrative agency on behalf of Exelon without first obtaining the approval of Government and Regulatory Affairs or the Legal Department. Government and Regulatory Affairs will also help ensure compliance with all lobbying registration, reporting, and disclosure requirements. All Exelon lobbyists are expected to follow both the letter and spirit of the lobbying laws and to maintain the highest standards of professional integrity.

The Company explicitly noted the Code and attached it as an exhibit to its filings with the SEC, including its Annual Report on Form 10-K for the year ended December 31, 2018.

Obviously, the Code was not followed.  Thus, the Company's public statements touting the Code were false and misleading.  In addition, the Company issued public statements that included the financial results from ComEd.  The statements did not disclose the effect that the bribery scheme had on those statements, including costs incurred for individuals that did little or no work, or the rates that ComEd's customers paid.  Accordingly, these statements were likewise false and misleading.

While the Company's financial statements did include risk disclosures, these were boilerplate and failed to warn about the specific issues present here.  For example, the Company's Annual Report for 2018 stated, in pertinent part:

During the fourth quarter of 2018, each registrant's management, including its principal executive officer and principal financial officer, evaluated the effectiveness of that registrant's disclosure controls and procedures related to the recording, processing, summarizing and reporting of information in that registrant's periodic reports that it files with the SEC. These disclosure controls and procedures

*Exelon Corporation Stockholder Litigation Demand*
Page 3

have been designed by each registrant to ensure that (a) information relating to that registrant, including its consolidated subsidiaries, that is required to be included in filings under the Securities Exchange Act of 1934, is accumulated and made known to that registrant's management, including its principal executive officer and principal financial officer, by other employees of that registrant and its subsidiaries as appropriate to allow timely decisions regarding required disclosure, and (b) this information is recorded, processed, summarized, evaluated and reported, as applicable, within the time periods specified in the SEC's rules and forms. Due to the inherent limitations of control systems, not all misstatements may be detected. These inherent limitations include the realities that judgments in decision-making can be faulty and that breakdowns can occur because of simple error or mistake. Additionally, controls could be circumvented by the individual acts of some persons or by collusion of two or more people.

The Company also issued materially false and misleading Proxy Statements during the time period of wrongdoing that misstated the Board's role in risk management. For example, the Company's 2019 Proxy Statement filed with the SEC on March 20, 2019, highlighted supposed "Board [a]ccountability" by claiming that:

The Board regularly reviews management's systematic approach to identifying and assessing risks faced by Exelon and each business unit, taking into account emerging trends and developments and in connection with capital investments and business opportunities.

*       *       *

The Company and its business units/operating companies also have Risk Management Committees composed of select senior officers including the chief executive officers of those business units/operating companies and the Exelon CEO, who meet regularly to discuss matters related to enterprise risk management generally, risks associated with new developments or proposed transactions under consideration, and ensure that processes are in place to identify and assess risks within the business as well as measure and manage risk exposures in accordance with Exelon's policies, programs, strategies, and risk appetite as approved by the Exelon Board.

The misleading 2019 Proxy Statement was the necessary and essential element of getting the members of the Board reelected.

As a direct result of this unlawful course of conduct, the Company is now the subject of at least one federal securities class action lawsuit. The DPA greatly increases the chances that this class action survives any anticipated motion to dismiss, further compounding the harm to the Company.

*Exelon Corporation Stockholder Litigation Demand*
Page 4

## DAMAGES TO EXELON

Exelon has expended and will continue to expend significant sums of money as a direct and proximate result of the misconduct described herein. Such expenditures include, but are not limited to, costs in responding, defending, and then settling the DOJ investigation, the costs expended to correct its inadequate internal controls over bribery laws and financial disclosures, the costs incurred investigating and defending Exelon and certain officers and directors in class action lawsuits for violations of securities laws, plus potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment, and costs incurred from compensation and benefits wrongly paid to individuals who breached their fiduciary duties to the Company.

Further, the Board's inability to implement and maintain adequate internal controls exposes Exelon to significant reputational damage within the business community, the public, and the capital markets. In addition to price and product quality, Exelon's current and potential customers consider a company's ability to curb known abuses and implement adequate controls to ensure illegal practices are timely discovered and properly addressed. Lobbying is an important part of the Company's work, as is discussing rate setting with the public. Politicians and customers are less likely to do business with companies that knowingly permit and/or encourage unscrupulous behavior.

## STOCKHOLDER DEMAND

Given the above, Mr. Clem demands that the Board take all necessary steps to investigate, address, and promptly remedy the harm inflicted upon Exelon as a result of the misconduct described herein. In particular, our client demands that the Board investigate the circumstances surrounding Exelon's false and misleading statements and violations of any applicable laws, rules, and regulations. In addition, our client demands that the Board investigate any other violations of applicable laws, rules, and regulations. Accordingly, the Board must undertake an investigation of the wrongdoing detailed herein by independent and disinterested directors with the assistance of independent outside legal counsel. The investigation should, among other things, be sufficient to determine:

(a) which current or former Exelon employees, officers, and/or directors were responsible for, and/or had knowledge of the Company's inadequate internal controls over financial reporting;

(b) which current or former Exelon employees, officers, and/or directors were responsible for, had knowledge of, and/or played an active role in the Company's failure to comply with applicable laws;

(c) which current or former Exelon employees, officers, directors, and/or agents were responsible for, had knowledge of, and/or played an active role in the Company's false and misleading disclosures;

*Exelon Corporation Stockholder Litigation Demand*
Page 5

      (d)     which Exelon employees, officers, directors, and/or agents, current or former, were responsible for, had knowledge of, and/or played an active role in oversight of all of the foregoing;

      (e)     the extent to which the current or former Exelon employees, officers, directors, and/or agents benefited as a result of the breaches of fiduciary duty owed to the Company and its stockholders; and

      (f)     the extent to which Exelon was damaged by all of the foregoing.

We note that on October 15, 2019, Exelon announced the departure of Anne R. Pramaggiore from her positions as Senior Executive President, Exelon; Chief Executive Officer, Exelon Utilities; and board member of ComEd. Though little information was given about Ms. Pramaggiore's reasons for "retiring," based on the timing of the criminal investigation by the DOJ and her abrupt departure, it is reasonable to believe that it was related to the bribery of ComEd. Accordingly, the Board's investigation must not only include wrongdoing by Ms. Pramaggiore and her team, but also what wrongful benefits she and her team received, and if she was wrongly allowed to retire with any other benefits or compensation that was the result of the wrongful conduct. If so, the Board must also have the Company initiate legal proceedings against those responsible for allowing Ms. Pramaggiore to retire unscathed.

Following the investigation, our client demands that the Company commence legal proceedings against each party identified as being responsible for the mismanagement and other related misconduct described above. The legal proceedings should bring claims for breaches of fiduciary duty and indemnification and contribution, among other relevant and appropriate claims. The legal proceedings should also seek recovery of the salaries, bonuses, director remuneration, and other compensation paid to the parties responsible because these parties were unjustly enriched by such compensation.

The Board must commence these legal proceedings as expeditiously as possible, keeping in mind the relevant statute of limitations periods. Because of concern that the proceedings cannot be initiated prior to the expiration of the relevant statute of limitations, the Board should secure tolling agreements from all potential defendants, which will allow the Board to complete its investigation and pursue all appropriate legal remedies. Moreover, to the extent that relevant statute of limitations periods expire prior to the Board commencing legal proceedings or obtaining tolling agreements, the Board must investigate and pursue claims for breaches of fiduciary duties and/or legal malpractice against those who allowed any statute of limitations periods to expire.

Finally, the Board must take all necessary actions to reform and improve its corporate governance and internal procedures to comply with all applicable laws and to protect Exelon from committing future wasteful acts. Additionally, any future resolutions to the Company's Bylaws or Articles of Incorporation should be put to a stockholder vote, and the following actions may be necessary to ensure proper corporate governance policies:

*Exelon Corporation Stockholder Litigation Demand*
Page 6

      (a)    a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

      (b)    a proposal to strengthen the Company's controls over Exelon's lobbying;

      (c)    a proposal to strengthen the Company's disclosure controls;

      (d)    a provision to establish a system for intake of employee complaints regarding potential violations of laws occurring at the Company; and

      (e)    a provision to permit the stockholders of Exelon to nominate at least three independent candidates for election to the Board.

Should you have any questions or concerns about this matter, please do not hesitate to contact me.

Sincerely,

*Gregory E. Del Gaizo*

Gregory E. Del Gaizo

1467745